IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **DALE KARDASZ**, ) | |
| on behalf of themselves and a Class of ) | |
| individuals similarly situated, ) | Cause No.: 4:15-cv-00251 |
| Plaintiff, ) | |
| v. ) | Div. No: |
| **WALGREEN CO.,** ) | |
| ) | |
| <u>Serve</u>: ) | **JURY TRIAL DEMANDED** |
| Registered Agent ) | |
| The Prentice-hall Corporation System ) | |
| 221 Bolivar Street ) | |
| Jefferson City MO 65101 ) | |
| Defendant. ) | |

## FIRST AMENDED COMPLAINT

COMES NOW Plaintiff Dale Kardasz, by and through counsel, and on behalf of himself and a Class of other individuals similarly situated, files this First Amended Class Action Complaint against Defendant Walgreen Co. ("Walgreens") under the provisions of the Missouri Merchandising Practices Act.

### PARTIES

1. Plaintiff Dale Kardasz is a citizen of Missouri and resident of St. Louis County, Missouri.

2. Defendant Walgreens Stores, Inc. is an Illinois corporation with its principal place of business in Illinois, and is a citizen of Illinois.

### JURISDICTION

3. Defendant is subject to *in personam* jurisdiction in Missouri because Defendant regularly and systematically conducts business in the State of Missouri, and has stores for the transaction of its business in Missouri.

1

4. Defendant is subject to subject matter jurisdiction in this court under the Class Action Fairness Act ("CAFA"), *28 U.S.C. Sec. 1332(d)* because:

(a) all members of the proposed Plaintiff Class, including the named Plaintiffs, are citizens of Missouri, and Defendant is a citizen of Illinois.

(b) the amount in controversy in this class action, when the claims of all class members are aggregated, exceeds $5,000,000;

(c) there are no Defendants who are citizens of Missouri.

## VENUE

5. Venue is appropriate in this District because the Plaintiffs purchased the allegedly fraudulently labeled, misbranded, and adulterated herbal dietary supplements in St. Louis County, Missouri at Defendant's Stores located in St. Louis County, which is within the Eastern District of Missouri.  *28 U.S.C. 105(a).*

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

6. This case concerns the fraudulent sale, advertisement, distribution, mislabeling, misbranding, and adulteration of certain herbal dietary supplements under the Walgreens trademarked name "Finest Nutrition," which were fraudulently labeled and advertised as including certain primary ingredients which, in fact, were not included within the Finest Nutrition product purchased.  For example, Defendant sold the herbal supplement labeled Ginseng, when in fact there was no ginseng whatsoever contained within the product.

7.  For at least the last four years, and continuing to the present day, Defendant Walgreen Co. ("Walgreens") has sold to Missouri customers, and continues to sell to Missouri customers, bottles of pill capsules containing certain herbal dietary supplements under the trademarked name "Finest Nutrition."  These include the following:

2

(a)  Ginkgo Biloba;

(b) St. John's Wort;

(c) Ginseng;

(d) Echinacea;

(e) Garlic;

9.  The "Supplement Facts" listed on the labels for each of these products state that the product contains the primary ingredient listed on the front of the label.

10.  Despite claiming that these primary ingredients were contained within the bottles, however, Walgreens has fraudulently sold to the public capsules which did not contain their primary ingredient, and which included substituted ingredients, products, adulterations, contaminants and fillers.

11.  These substitutions, adulterations, contaminants, and fillers include such products as oryza (rice), daisies, palm, wheat, and dracaena (a tropical houseplant).  Sometimes, the bottles of dietary herbal supplement capsules sold by Walgreens contained no identifiable plant/botanical products whatsoever.

12.  In October 2013, researchers in Ontario Canada released a report finding that nearly all of the companies selling herbal dietary supplements in North America had included within their bottles substitutions, adulterations, contaminants and fillers.  The researchers found that more than half of samples tested contained ingredients not on the label, and that 68% contained product substitutions. See Center for Biodiversity Genomics, University of Guelph, "DNA Barcoding detects contaminants and substitutions in North American herbal products," *BMC Medicine* 2013, 11:22.

13.  The results of this study were provided to Walgreens and the other sellers of North American herbal dietary supplements, but Walgreens did nothing.

14.  On February 2, 2015, the New York Attorney General sent a Cease and Desist letter to Walgreens, advising of the results of an investigation by the AG into Walgreens's fraudulent sale of these herbal dietary supplements.

15.  The New York Attorney General's representatives purchased six dietary herbal supplements (Ginkgo Biloba, Ginseng, Garlic, St. John's Wort, Echinacea, and Saw Palmetto) from three different New York Walgreens stores (producing a total of 18 bottles), and took five samples from each bottle, rendering a total of 90 samples.  These 90 samples were then "DNA Barcode Tested" by an independent lab.

16.  "DNA Barcoding" is a technique for characterizing species of organisms using a short DNA sequence from a standard and agreed-upon position in the genome. DNA barcode sequences are very short relative to the entire genome and they can be obtained reasonably quickly and cheaply tracking certain DNA sequences.

17.  One of the samples, Saw Palmetto, passed.  The samples all contained saw palmetto.  The other five herbal supplements, however, flunked.

18.  For example, none of the samples from the Fine Nutrition Walgreens bottles which were falsely labeled Ginkgo Biloba contained any Ginkgo Biloba DNA at all.  All samples included DNA from oryza (rice), a product listed nowhere on the label.

19.  The samples from the bottles of Fine Nutrition which were falsely labeled St. John's Wort contained no DNA for St. John's Wort at all.  Three contained some botanical DNA, which included allium (garlic, onions), oryza (rice) and dracaena (tropical house plant), ingredients which were listed nowhere on the label.

4

20. The samples from the bottles of Fine Nutrition which were falsely labeled Ginseng contained no DNA for Ginseng at all. Instead, two samples contained allium (garlic, onions) and six samples contained oryza (rice), ingredients which were listed nowhere on the label.

21. Fourteen of the 15 samples from the bottles of Fine Nutrition which were falsely labeled Garlic contained no garlic or allium at all. Instead, they contained palm, dracaena, wheat, and oryza, ingredients found nowhere on the label. Ten contained no botanical DNA at all.

22. None of the samples from the bottles of Fine Nutrition which were falsely labeled Echinacea contained any echinacea at all. Five contained DNA from allium; five contained DNA from oryza; one contained DNA from a daisy. None of those ingredients were listed on the label.

23. Similar Cease and Desist letters were sent by the New York Attorney General to other dietary herbal supplement distributors, such as GNC, Target Corporation, and Wal-Mart, whose dietary herbal were also found to lack the primary ingredient, and to contain substitutions, adulterations, contaminants, and fillers found nowhere on the package label.

24. For at least the last four years, Plaintiff Dale Kardasz regularly purchased herbal dietary capsules, including Echinacea, from Walgreens.

25. Plaintiff Kardasz, like the other members of the Class, were defrauded out of their money because the products they purchased were mislabeled, misbranded, and adulterated, and failed to contain the essential ingredients they wished to purchase.

26. As a result of the Ontario study and the New York investigation, it is clear that this problem with Walgreens Finest Nutrition dietary herbal supplements failing to contain their essential advertised ingredient, and containing substitutions, adulterations, contaminations, and fillers, is widespread and applies across Missouri and nationwide.

27. Plaintiffs and other Class members purchased the Walgreens Finest Nutrition products because they were supposed to contain the ingredients advertised--the ingredients which were listed on the label.  Someone intending to buy Ginkgo Biloba, for example, is defrauded if there is no Ginkgo Biloba in the bottle, and the bottle instead contains rice, daisies, houseplants, palm, and other unknown fillers.

28. Defendant Walgreens knew or should have known that for the last four years they have been selling to Missouri customers and the general public Finest Nutrition products which were not as advertised, which did not contain the products listed on the labels, and which contained instead substitutions, adulterations, contaminations, and fillers.

29. In fact, Walgreens advertised on the label that its products were "100% satisfaction guaranteed."

## CLASS ACTION ALLEGATIONS

30. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on his own behalf and on behalf of a Missouri Class defined as:

> All residents of the State of Missouri who, at any time between February 6, 2011 and the date of trial, purchased any of the following Finest Nutrition dietary herbal supplements from a Walgreens store in Missouri, or who ordered any of the following Finest Nutrition dietary herbal supplements online and had them shipped to a Missouri address:
>
> (a) Finest Nutrition Ginkgo Biloba;
> (b) Finest Nutrition Ginseng or Korean Panax Ginseng;
> (c) Finest Nutrition St. John's Wort;
> (d) Finest Nutrition Echinacea;
> (e) Finest Nutrition Garlic.

31.  Excluded from the Class are affiliates, predecessors, successors, officers, directors, agents, servants, or employees of Walgreens, and the immediate family members of such persons.

32.  Also excluded is any trial judge who may preside over this action, court personnel and their family members, and any juror assigned to this action.

33.  Plaintiffs are both members of the Class which they seek to represent.

34.  The Class consists of millions of individuals and/or entities and therefore is so numerous that joinder is impracticable.

35.  Plaintiffs' claims are typical of the claims of the Class because Plaintiffs and the members of the Class have sustained damage as a result of Walgreens's fraudulent advertising, selling, mislabeling, distribution, misbranding, and adulteration of herbal dietary supplements which did not contain their primary ingredient.

36.  There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including but not limited to the following:

(a) whether Walgreens's advertising, labeling, distribution and sale of Finest Nutrition dietary herbal supplements was false and violated the provisions of the Missouri Merchandising Practices Act;

(b) whether Walgreens was unjustly enriched by their sale of a cheap, substituted product like rice filler instead of the more expensive product labeled and advertised unjustly enriched Walgreens;

(c) whether Walgreens violated the Missouri Merchandising Practices Act by failing to inform customers, and by concealing the fact that the primary ingredient was not included within the product, and that different, unlabeled ingredients would be contained within the product;

(d) whether Walgreens engaged in unfair business practices in its sale and advertisement and labeling of Finest Nutrition dietary herbal supplements;

(e) whether Walgreens established best business practices for monitoring the content of its Finest Nutrition products, including inspection, DNA bar coding, and other practices;

(f) whether Walgreens adequately monitored and inspected the manufacturer of these dietary herbal supplements, and hired a reliable manufacturer of said supplements, with adequate safety protocols and safeguards;

(g) whether Walgreens adequately monitored the dietary herbal supplements to ensure that they did not contain allergens like nut products or byproducts, metals, and other unsafe ingredients;

(h) whether any portion of Plaintiffs' claims are preempted by the FDCA or its amendments, and other affirmative defenses raised by Walgreens;

(i) whether and when Walgreens knew that its dietary herbal supplement products were not as advertised and labeled, and the reasons why it chose to do nothing; and

(j) the availability of punitive damages.

37.  All common questions are able to be resolved through the same factual occurrences as specifically and/or generally alleged herein.

38.  Plaintiffs will fairly and adequately represent the Class and protect the interests of the members of the Class.  Plaintiffs have no claims antagonistic to those of the Class.

39.  Plaintiffs retained competent and experienced counsel in complex class actions.

40.  Counsel is committed to the vigorous prosecution of this action.

41. The prosecution of separate actions by Plaintiffs and individual members of the Class against Walgreens would create a risk of inconsistent or varying adjudications on the common issues of law and fact related to this action. A class action is appropriate and the superior method for the fair and efficient adjudication of this controversy.

42. The expense and burden of litigation would substantially impair the ability of the Class members to pursue individual cases to protect their rights. In the absence of a class action, Walgreens will retain the benefits of its wrongdoing and will continue to sell fraudulently labeled and advertised dietary herbal supplements to the public.

43. Walgreens has refused to act and refused to recall its mislabeled products, which applies generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate relating to the class as a whole.

44. To Plaintiff's knowledge, there are no other Class actions in Missouri against Walgreens on this subject to date.

45. The interests of concentrating the action in one forum is paramount. Plaintiffs do not envision significant difficulties in managing the Class and class issues.

46. Accordingly, certification of a Class is appropriate here.

COUNT I
(Violation of the Missouri Merchandising Practices Act)

47. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

48. This action is brought, in addition to Federal Rule of Civil Procedure 23, pursuant to the class action provisions in the MMPA found in *Rev. Stat. Mo. Sec. 407.025*. Subsection 2 of that Section provides:

*Persons entitled to bring an action pursuant to subsection 1 may, if the unlawful method, act or practice has caused similar injury to numerous other persons, institute an action as representative or representatives of a class against one or more defendants as representatives of*

9

*a class, and the petition shall allege such facts as will show that these persons or the named defendants specifically named and served with process have been fairly chosen and adequately and fairly represent the whole class, to recover damages as provided for in subsection 1 of this section. The plaintiff shall be required to prove such allegations, unless all members of the class have entered their appearance, and it shall not be sufficient to prove such facts by the admission or admissions of the defendants who have entered their appearance. In any action brought pursuant to this section, the court may in its discretion order, in addition to damages, injunction or other equitable relief and reasonable attorney's fees.*

49. *Rev. Stat. Mo. Sec. 407.020* prohibits the use of any "deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise[1] in trade or commerce."

50. Walgreens made the following deceptive, fraudulent, false statements and misrepresentations regarding their dietary herbal supplements:

(a) representing on the bottle that the product contained Ginkgo Biloba, when, in fact, it did not;

(b) representing on the bottle that the product contained Ginseng or Korean Panax Ginseng, when, in fact, it did not;

(c) representing on the bottle that the product contained St. John's Wort, when, in fact, it did not;

(d) representing on the bottle that the product contained Echinacea, when, in fact, it did not;

(e) representing on the bottle that the product contained Garlic, when, in fact, it did not;

(f) representing on the bottle that the product contained other primary ingredients, when, in fact, they did not;

(g) representing on the bottle that the product contained a certain number of milligrams of the primary ingredient, when, in fact, it did not;

(h) making these misstatements again on the "Supplement Facts" portion of the label;

---

[1] "Merchandise" is defined in the MMPA in *Rev. Stat. Mo. Sec. 407.010(4)* to include "goods" like herbal dietary supplements.

10

(i) stating on the label of the Finest Nutrition Garlic bottles that the products contained "NO" wheat, when in fact many of the bottles did contain wheat and wheat grass;

(j) stating on the Finest Nutrition labels that the products were "100% Satisfaction Guaranteed," when, in fact, they were not; in fact, Walgreens has not returned the unfair profits that they have earned on these fraudulently labeled products.

51.  Walgreens made the following concealments, suppressions, and omissions of material facts:

(a) Walgreens failed to advise that all or many of its dietary herbal supplements would not contain any of the primary ingredient advertised;

(b) Walgreens failed to advise that when the primary ingredient was included, it would only represent a small amount of the contents of the capsule, and the rest would be filled with substitutions, adulterations, contaminants and fillers found nowhere on the label;

(c) Walgreens failed to disclose that its dietary herbal supplements contained substitutions, adulterations, contaminants, and fillers found nowhere on the label, including but not limited to rice, dracaena, cassava, wheat and wheat grass, eastern white pine, palm, allium, and citrus, and that often these substitutes and fillers were the only things contained within the capsules;

(d) Walgreens failed to disclose that its dietary herbal supplements may contain wheat and wheat grass, which may interfere with those individuals who wanted a wheat-free or gluten-free diet;

(e) Walgreens failed to disclose that its herbal dietary supplements may contain nut products, which may be dangerous to individuals who have nut allergies; and

(f) Walgreens failed to disclose exactly what ingredients were in its dietary herbal supplements.

 52.  An "unfair practice" is defined in Missouri state regulations, *15 CSR Sec. 60-8.020* as any practice which:

*(A) Either:*

> *(1) Offends any public policy as it has been established by the Constitution, statutes, or common law of this State, or by the Federal Trade Commission, or its interpretive decisions;*
> *(2) Is unethical, oppressive, or unscrupulous; and*

*(B) presents a risk of, or causes, substantial injury to consumers.*

53. Walgreens committed an unfair practice because its actions violated public policy as it has been established by the statutes of this state, including but not limited to *Rev. Stat. Mo. Secs. 196.010 to 196.120* (Missouri's adoption of the Uniform Food, Drug & Cosmetic Act), which prohibits false advertising, misbranding, mislabeling and adulteration of food and drugs.  In addition, Walgreens's actions were unethical, oppressive, and unscrupulous.  Walgreens's actions also caused substantial injury, and presented a risk of substantial injury, to consumers in Missouri.

54. An "unfair practice" under the MMPA is further defined in *15 CSR Sec. 60-8.040 as:*

*(1) It is an unfair practice for any person in connection with the advertisement or sale of merchandise to violate the duty of good faith in solicitation, negotiation, and performance, or in any manner fail to act in good faith.*

55. Walgreens also committed an unfair practice by failing to act in good faith with respect to the sale, labeling and distribution of its Finest Nutrition dietary herbal supplements.

56. Defendant is subject to the MMPA in the sale of its dietary herbal supplements.

57. Under the MMPA, reliance upon fraudulent statements or concealments is not a required element.

58. *Rev. Stat. Mo. Sec. 407.025* allows for any person who has purchased:

*"...merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action in either the circuit court of the county in which the seller or lessor resides*

12

*or in which the transaction complained of took place, to recover actual damages. The court may, in its discretion, award punitive damages and may award to the prevailing party attorney's fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary or proper.*

59. Plaintiffs, and the other members of the class, purchased the Defendant's goods primarily for personal, family, or household purposes.

60. The Plaintiffs and the members of the class suffered an appreciable loss of money or property as a result of the use or employment by Defendant of a method, act, or practice declared unlawful under *Section 407.020*, as more fully set forth above.

61. Accordingly, Defendant has violated the MMPA, and Plaintiffs and the Members of the Class are entitled to all the relief available under the MMPA.

## COUNT II
(Breach of Express Warranty)

62. Plaintiffs reincorporate all previous Paragraphs as if more fully set forth herein.

63. Walgreens provided Plaintiffs and the other Members of the Class with written express warranties, including warranties that its Finest Nutrition products included ginkgo biloba, Ginseng, garlic, St. John's wort, and echinacea.

64. Walgreens breached these warranties by misbranding and mislabeling its products, and selling products which did not contain these ingredients.  Accordingly, said products did not conform to its express warranties.

65. These breaches in warranties resulted in damages to Plaintiffs and the other Members of the Class who bought Misbranded and adulterated Finest Nutrition products and did not receive the goods as warranted.

66. As a direct and proximate result of the breaches of express warranties, Plaintiffs and the other Members of the Class were damaged.

13

## COUNT III
(Breach of the Implied Warranty of Merchantability)

67. Plaintiff incorporates by reference all previous paragraphs as if more fully set forth herein.

68. Implied in the purchase of the misbranded Finest Nutrition dietary herbal supplements is the warranty that the purchased products contained their primary ingredient, are legal and can be lawfully resold.

69. Defendant knowingly and intentionally misbranded and adulterated the Finest Nutrition products.

70. Defendant knew or should have known that the misbranded Finest Nutrition products were illegal, misbranded, and adulterated, and failed to contain their primary ingredient.

71. Plaintiff and the other Members of the Class would not have purchased products which were illegal and unsellable.

72. No reasonable customer would purchase Finest Nutrition products which were unsuitable for the ordinary purpose for which Plaintiff and the Class purchased them.

73. The sold products were essentially worthless.

74. As a result, Plaintiff and the Members of the Class were injured through their purchase of an unsuitable, useless, illegal and unsellable product.

75. As a direct and proximate result of the breach of the implied warranty of merchantability, Plaintiff and the Class were injured.

## COUNT IV
(Unjust Enrichment)

76. Plaintiff incorporates by reference all preceding Paragraphs as if more fully set forth herein.

77. As a result of Defendant's unlawful and deceptive actions and concealments as more fully outlined above, the Defendants were unjustly enriched at the expense of Plaintiffs and the

14

Members of the Class through the payment of a purchase price for a misbranded, adulterated, and worthless product.

78.  Under the circumstances, it would be against equity and good conscience to allow Defendant to retain the ill-gotten benefits from Plaintiffs and the Class.

COUNT V
(Breach of Contract)

79.  Plaintiff incorporates all previous paragraphs as if more fully set forth herein.

80.  Plaintiff and the Members of the Class entered into contracts with Defendant whereby Plaintiffs and the Class agreed to purchase the Finest Nutrition herbal dietary supplements, and Walgreens would supply them with said supplements which contained the primary ingredient listed on the label.

81.  Plaintiff and the Members of the Class fulfilled all of their obligations under the contracts by tendering the amount charged to Defendant.

82.  Defendant materially breached the contracts by providing products which did not contain the primary ingredients, and which instead included substitutions, adulterations, contaminants and fillers, which were nowhere listed on the label.

83.  As a direct and proximate result of the Defendant's material breach of the contracts, Plaintiff and the Members of the Class were damaged.

**PRAYER FOR DAMAGES AND INJUNCTIVE RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all Members of the Class, pray for judgment against the Defendant, and seeks the following:

(a) for an Order certifying that this action may be maintained as a class action and appointing Plaintiff and their counsel to represent the Class;

(b) for a declaration that Defendant's actions violated Plaintiff's and the Class Members' rights under Missouri Law as set forth above;

(c) for all actual damages, statutory damages, penalties, and remedies available for Defendant's violations of Plaintiff's and Class Member's rights and violations of law;

(d) for an award to Plaintiff and the Class of their reasonable attorney's fees;

(e)  for pre-judgment interest as allowed by law;

(f) for post-judgment interest as allowed by law;

(g) for court costs and expenses as allowed by law;

(h) for a permanent injunction enjoining the Defendant from continuing to sell to the public these adulterated and substituted dietary herbal supplements;

(i) for punitive damages in an amount sufficient to punish the Defendant and deter future similar conduct; and

(j) for such other and further relief as the Court deems just and proper.

Respectfully Submitted,


**THE MEDLER LAW FIRM, LLC**

**/s/ John F. Medler, Jr.**
John F. Medler, Jr. MO Bar #38533
7700 Bonhomme Ave
Suite 360
Clayton MO 63105
(314)-727-8777 (office)
(314)-727-7001 (fax)
(314)-210-4745 (cell)
*john@medlerlawfirm.com (e-mail)*

**ENGELMEYER & PEZZANI, LLC**

by: **/s/ Timothy A. Engelmeyer**
Timothy A. Engelmeyer, #39941MO
*tim@epfirm.com*
Anthony M. Pezzani, #52900MO
*tony@epfirm.com*
13321 North Outer Forty, #300
Chesterfield, MO  63017
Phone:  636-532-9933
Fax: 314-863-7793


**THE LAW OFFICES OF RONNIE G. PENTON**
Ronnie G. Penton
209 Hoppen Place
Bogalusa, LA  70427
(985)-732-5651 (phone)
(985)-735-5579 (fax)
*Motion for admission pro hac vice pending*

*Counsel for Plaintiff Rafael Figueiredo, Dale Kardasz, and the Class*

17

Case: 4:15-cv-00251-AGF   Doc. #:  2   Filed: 02/09/15   Page: 18 of 18 PageID #: 36